M. C. STOKES, PLAINTIFF IN ERROR, VS. HENRY BAARS, DEFENDANT IN ERROR.

1. A contract to deliver a certain quantity of timber at so much per foot, to be inspected, and to be delivered "as fast as water will permit, and to be completed not later than June 15, 1880, payment cash on handling specifications," is an entire and not a severable agreement.

2. On delivery of a portion of such timber, duly inspected, the purchaser refuses to pay the full price but deducts $200, being the amount of a draft previously drawn on him by the seller, which the purchaser falsely says he has paid, on the faith of which statement delivery was made, and the $200 remains unpaid. This is not a compliance by the purchaser, and is such a breach of the contract that the seller may refuse further delivery under it.

3. After such breach, (the purchaser having assigned the agreement for the benefit of his creditors) the assignor in his own right, or for his assignees, cannot recover damages for subsequent non-delivery to him.

4. The assignee of such a contract takes it subject to all defences available against the assignor.

5. The purchaser of a certain quantity of timber under a contract to pay for it on delivery, from time to time, by becoming insolvent and making an assignment for the benefit of creditors, is disabled to perform, and thenceforth neither he nor his assignees can claim damages for future non-delivery to the assignees, with whom the seller did not contract.

6. In a declaration in a suit by the purchaser against the seller for breach of a contract by the seller who engages to deliver 2,500 pieces of timber "as fast as water will permit, and to be completed not later than the 15th of June," it is essential to allege that the water was such as to permit the delivery, this being evidently a condition of the contract to deliver.

7. A demurrer by a plaintiff to a plea of the defendant reaches essential defects in the declaration, and if that be defective the demurrer to the plea should not be sustained.

Writ of Error to the Circuit Court for Santa Rosa county.

Suit was commenced by Baars for the use of Knowles &

Brent, assignees for the benefit of creditors, upon a contract by Stokes to deliver, within reach of steamer at Milton, 2,500 to 3,000 pieces sawn timber of certain quality and size, and at a fixed price per cubic foot. Timber to be inspected by F. R. Goulding, and in accordance with the rules of last season. Delivering as fast as water will permit, and to be completed not later than 15th June, 1880. Payment cash on handling specifications.

The declaration avers that on April 9, 1880, Baars assigned the contract to Knowles & Brent for the benefit of plaintiff's creditors; that prior to the assignment the plaintiff, and since then the assignees, have been ready and willing to receive and pay for the timber in accordance with the terms of the contract, but defendant has not delivered more than 1,300 pieces, but has wholly refused and neglected so to do, whereby the plaintiff has lost great gains and profits which he would have made but for defendant's default.

Defendant interposed twelve pleas, upon four of which issue was joined, and to the others plaintiff demurred.

The second plea alleges that he delivered timber to plaintiff before the assignment, but Baars failed and refused to pay for a large portion thereof; since which defendant declined to make further delivery.

The third alleges that plaintiff, before the assignment, violated the agreement by failing to pay cash for timber delivered; wherefore defendant made no further delivery.

The fourth plea alleges that before the assignment defendant began to deliver under the contract; that before any delivery, and in anticipation thereof, he drew on plaintiff for $200, and plaintiff accepted the draft; that about the time of its maturity defendant was ready to deliver timber and tendered specifications under the contract, and demanded payment therefor; plaintiff paid for the delivery

42

less the $200 acceptance, which plaintiff said had been paid, and defendant, relying on such statement, delivered the timber; that said draft in fact had not been and has not yet been paid; wherefore defendant declined to make further delivery.

Seventh plea, that plaintiff was not at the time of the breach alleged ready to receive and pay for the timber according to the contract.

Eighth plea, that plaintiff assigned the contract to Knowles & Brent before the alleged breach.

Tenth plea, that at and before alleged breach, and before the assignment, Baars was insolvent.

Eleventh plea, that he delivered timber in compliance with contract up to the time of the assignment, and upon last delivery $200 remains unpaid, which Baars neglected and refused to pay; that Baars was insolvent and assigned all his property to K. & B., and the latter have not paid the said $200 so unpaid by Baars.

Twelfth plea, substantially the same.

To these pleas plaintiff demurred :

To the second, third and fourth, because the alleged breach by plaintiff did not release defendant; and because these pleas show a waiver by defendant of the breach alleged against plaintiff.

To the seventh, because it does not negative the readiness and willingness of the assignees to pay.

To the eighth, because the alleged assignment did not release defendant from performance.

To the tenth, because the insolvency of plaintiff is not alleged to the time of breach, and because the assignees are not alleged to have been insolvent.

To the eleventh and twelfth, because the alleged nonpayment by plaintiff and by assignees did not excuse performance by defendant. To each of the pleas, that they are insufficient.

The court sustained all the demurrers, and upon trial of the issues joined plaintiff recovered judgment for $810 and cost.

The errors assigned are that the court overruled the pleas sustaining the demurrers.

*G. G. McWhorter* and *John C. Avery* for Plaintiff in Error.

*W. A. Blount* for Defendant in Error.

THE CHIEF-JUSTICE delivered the opinion of the court.

Was this *contract* entire or severable? We first examine the agreement and authorities cited by defendant in error. Parsons on the Law of Contract (3d Ed., Sec. 4, pp. 29, 30,) says: "If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable." This is illustrated by the case of Johnson vs. Johnson, 3 Bos. & Pull., 162, where plaintiff had purchased from the same party two parcels of real estate, the one for 700 pounds, the other for 300 pounds. After payment and possession delivered, plaintiff was evicted from one parcel in consequence of a defect in the title, and brought his action to recover back the price of the latter. The court held that he could recover, for although both pieces of ground were bargained for at the same time the bargain must be considered as consisting of two distinct contracts; and in the case of Robinson vs. Green, 3 Metcalf, 159, where an auctioneer engaged with another to sell a large number of lots of wood, part of them in another county where the auctioneer could not legally sell, and wherefore it was claimed that the contract for services as auctioneer was entire, and being in part

illegal, the action could not be sustained, the court held that the sale of each lot was a distinct contract, and the plaintiff's claim for compensation arises upon each sale, and is complete on each sale. "If there were an express promise to pay him a fixed sum for the entire sale it would have presented a different question."

Says Parsons: "If the consideration to be paid is single and entire the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items. The mere fact that the subject of the contract is sold by weight or measure, and the value is ascertained by the price affixed to each yard or pound or bushel of the quantity contracted for, will not be sufficient to render the contract severable." Parson Con., 31, 32, and cases noted.

In Boone vs. Eyre, 1 H. Bl., 273, note, there were mutual covenants going only to parts of the consideration, and because the defendant had his remedy on the covenant he could not plead a breach of a condition precedent. That was a case of a sale of a plantation and slaves with covenant of title for a money consideration, and as a further consideration a covenant to pay an annuity. The case of Franklin vs. Miller, 4 Ad. & E., 599, decided that the plea was bad, (in a case of mutual covenants) as showing only a partial failure of performance by plaintiff, which did not authorize defendant to rescind the contract, but he must rely on the covenants.

The court in Perkins vs. Hart, 11 Wheat., 237, say: "That if the contract was fully performed in relation to any one subject covered by it, * * the plaintiff might well maintain an action of indebitatus assumpsit for his stipulated compensation in cash, on that transaction, and was not bound to wait until all the lands to which his agency extended were disposed of. Where the agreement embraces

a number of distinct subjects, which admit of being separately executed and closed, it must be taken distributively, each subject being considered as forming the matter of a separate agreement after it is so closed."

Sickles vs. Pattison, 14 Wend., 257, merely affirms that where there is an entire contract for performance, the party failing to perform is not entitled to maintain an action for part, except where there is a stipulation for payment of a part performance.

It is correctly claimed by counsel for defendant in error that if the contract is severable, a failure of plaintiff to perform one of several stipulations which is independent of the other would not authorize the defendant to refuse to proceed with his part; and that a refusal of the plaintiff to perform must, in order to entitle the defendant to rescind, be absolute and unqualified. It was so held in Smoot's case, 15 Wall., 36, 48 ; Benj. on Sales, §568 ; Smith's Lead. Cas., 28, 37 ; 8 Bing., 124 ; 7 Ad. & Ellis, 557 ; 4 Best & Smith, 295, and other authorities cited by counsel, and I do not understand this position to be questioned by counsel for plaintiff in error. But it is said on the other side that this is not a several or severable contract but is entire. Plaintiff in error insists that there is but one contract here, and that is an agreement on his part to deliver a certain number of pieces of timber, water permitting, by a certain day, all deliverable on the first or the last day named, or by such instalments as may be convenient to himself, and to be paid therefor at the rate of so much per cubic foot, on handing to plaintiff specifications of measurement of timber ready for delivery. In Clark vs. Baker, 5 Met., 452, there was a purchase of a cargo of yellow and white corn on board seller's schooner, quantity not known, one price for the yellow and another price for the white, it was held that the contract was entire, and it could not be

allowed that there was a separate contract for each bushel or for each kind of corn.

Gardner vs. Clark, 21 N. Y., 399, was an action by an assignee of Gardner against Clark for damages from the non-performance of a contract to sell and deliver a thousand bushels of barley at 44 cents per bushel, at a store house, *to be paid for as fast as delivered.* Defendant pleaded that a portion of the barley had been delivered, and that he had always been willing and ready to deliver the residue according to the terms of the contract, but that Gardner was not ready or willing to receive or pay for the same according to the contract. It was held that though defendant had not demanded payment for each load that had been delivered, yet he had a right at any time upon being ready to deliver a load, and offering so to do, to demand payment for such load, and that upon non-compliance by plaintiff the contract was broken on his part. It is evident that the court thought that an *entire* contract and that the rescission was concurrent.

The case of Withers vs. Reynolds, 2 B. & Ad., 882, 22, (Eng. Com. Law) was this: " Reynolds agreed to supply Withers with straw, to be delivered at W.'s premises, at the rate of three loads a fortnight, until 24th June, 1830, at 33 shillings per load, and W. agreed to pay R. the agreed price for each load so delivered. The straw was delivered from October, 1829, till January, 1830, at which time plaintiff being in arrears for several loads defendant demanded the amount, and plaintiff then tendered defendant the price of all the straw delivered except the last load, saying, ' he should always keep one load in hand.' Defendant objected, and was obliged to take the money offered, and then told plaintiff he would send no more straw unless it was paid for on delivery, and no more was sent. Plaintiff then sued for damages for non-delivery of

straw. The court decided that plaintiff having expressly refused to pay for the load as delivered, according to the contract, the defendant is not liable for ceasing to perform on his part."

Coleridge, J., in Franklin vs. Miller, 4 Ad. & Ellis, 599, says: "The rule is that in rescinding, as in making a contract, both parties must concur. In Withers vs. Reynolds each load of straw was to be paid for on delivery. When the plaintiff said he would not pay for the load on delivery that was a total failure, and the plaintiff was no longer bound to deliver. In such a case it may be taken that the party refusing has abandoned the contract."

There is in Smith's Leading Cases, pp. 36, 37, &c., (5 Am. Ed.) an examination of many cases collated upon this point, from which it is established that "where one contractor has absolutely refused to perform, or rendered himself incapable of performing his part of the contract, the other contractor may, if he please, rescind, such act or such refusal being equivalent to a consent to the rescission."

The Supreme Court of Illinois in Bradley vs. King, 44 Ill., 339, had a case *quatnor pedibus* with the present respecting the question of entirety of the contract and rescission. Bradley & Co., by sealed articles with King & Brothers, agreed to deliver to the latter in Chicago one million feet of lumber. King & Bros. agreed to pay $2,000 down, $1,000 March 15, $1,000 on the first and $1,000 on the 15th April, and the balance as fast as the lumber should be received, the whole to be delivered by September 1. On that day there had been delivered only about 218,000 feet. Between that and September 29 nearly 600,000 feet more were delivered. An action of covenant was brought by purchasers against vendors for failure to deliver lumber as required by the contract. The court below sustained a demurrer to the third plea, which averred that for the

last cargo delivered to and accepted by plaintiffs they refused to make payment. The court say that "although the acceptance by the plaintiffs of a part of the lumber after the 1st September was a release of damages for non-delivery only as to the portion accepted, there being no express waiver. yet when on the 29th September the defendants delivered, and the plaintiffs accepted a cargo, it was clearly accepted on the terms of the original contract as to payment. Its acceptance placed the purchasers under the same obligations as to payment that they would have been under had the cargo been delivered prior to the 1st of September. and that obligation was, by the terms of the contract, payment on delivery. If the purchasers refused to perform this obligation on their part the vendors were excused from further delivery. The payment for the lumber at the time of its receipt was a condition precedent, so far as concerned the right of the plaintiff to demand further delivery."

The plea was held good.

All the cases hold that a refusal to pay for the part delivery, as required by the terms of the contract, is an abandonment on the part of the party refusing to pay, and is such an absolute unqualified refusal to perform that the seller may also treat the contract as rescinded, and is under no obligation to perform further on his part.

Was there then a refusal to pay on the part of Baars. at the time of the part delivery of the lumber, as alleged in the pleas of the defendant Stokes in this case?

The second and third pleas aver that Baars refused to pay for quantities of timber delivered under the agreement, wherefore defendant made no further delivery. These are good pleas according to the uniform language of the decisions. The fourth plea avers that in anticipation of delivery, the defendant drew on Baars for $200, which draft was accepted by him, and that on making delivery of tim-

ber to Baars, with specifications, the latter paid him therefor, excepted the $200 acceptance which Baars said had been paid, and relying on this statement defendant made delivery, but that in fact the $200 acceptance had not been paid by Baars, and has not yet been paid, and defendant therefore declined to make further delivery.

It does not appear that the $200 draft was delivered or received as a payment, but on the false representation that it had been paid, and defendant supposing it had been paid, he treated it as a payment and delivered the timber. If that $200 had not been paid Baars had not complied with the condition of delivery, but had deceived defendant, and by the deception had obtained the delivery without payment. But plaintiff's counsel insists that " the plea should have alleged a destruction of the acceptance, or should have offered to return it, and that he cannot leave the acceptance outstanding, with the right of suit upon it."

But if it is outstanding, it is because Baars has not paid, and he being now insolvent, " the right of suit," it is more than probable, will be exercised against defendant rather than against Baars. When Baars pays it, it will be simply paying what he owes, so that he will lose nothing. It was his failure and refusal to *pay*, according to his contract, that gave defendant the right to join him in repudiating it.

Other pleas of the defendant are that Baars was not ready to receive and pay for the timber, according to the contract; that he had before breach assigned to Knowles & Brent; that Baars was insolvent; and that K. & B. have not paid the $200 remaining unpaid on the first delivery.

While courts of law permit and protect assignments of choses in action to a certain extent, yet there can be no right of action at common law by the assignee in his own name, except upon an express promise, but the suit may be in the name of the assignor for the benefit of the assignee,

and in that case the defendant may avail himself of all the defences he might have had against the assignor. 1 Parsons on Con., 3d Ed., 195, 196.

The assignees can have no greater or other right than the assignor had at the time of the assignment. No right was created against Stokes by the assignment. Stokes contracted with Baars, and not with the assignees. The latter cannot take the position of the assignor without the assent of the other party to the contract. There is no reciprocity of duty as to them; no action could be maintained against them for a breach of the assigned contract. Baars had become disabled to comply with his side of it, and it is laid down that when a party has incapacitated himself from performing, the same consequence follows as if he had absolutely refused to perform. In Robson vs. Drummond, 2 B. & Ad., 303, Robson and Sharpe were partners, and Sharpe made a contract in his own name with Drummond for the hire of a coach for five years, Sharpe to keep it in repair. The contract was with Sharpe alone, although Robson & Sharpe carried on the business. At the end of three years Sharpe dissolved the partnership with Robson and transferred the coach, and the entire business to the latter. Robson offered to go on and carry out the contract of Sharpe, but Drummond refused to have anything to do with him. Sharpe said he could not complete the contract as he had assigned it to Robson. Robson & Sharpe then sued Drummond on the contract, and were non-suited. In the K. B., Parke, J. said, that "the very fact of Sharpe having transferred his interest to Robson, was equivalent to saying, I will not perform my part of the contract." Patterson, J., said: "It was in substance a case where a person having made a contract in his own name attempts to back out of it, and transfer it to a third person. That he had no right to do."

The case of Reader vs. Knatchbull is referred to by counsel for plaintiff in error, but the only report of the case we have been able to find is in a note in 5 T. R., 218, where it is said that plaintiff declared upon an agreement, by defendant, to deliver him a quantity of Manchester cottons. The defence was, that after the making of the contract, the plaintiff had compounded with his creditors. Buller, J., told the jury that if they believed the plaintiff was really in such a situation as to be unable to pay for the goods, if delivered, that was a good defence in point of law.

Counsel for plaintiff in error also refers to *ex parte* Chalmers, *In re* Edwards, cited in Benjamin on Sales, §759, which says that " if goods are deliverable by successive instalments, the assignee of the bankrupt purchaser cannot adopt the contract and claim further deliveries under it, without paying the price of what was delivered prior to the bankruptcy."

Defendant in error replies that this rule is not applicable because it was the case of a bankrupt against whom all personal remedies are taken away by the discharge, and the law will not allow the assignees to insist upon the performance by the other contracting party from whom all remedy is taken, without paying his claim against the bankrupt ; and this is a case of a voluntary assignment by an insolvent, against whom the plaintiff in error retains all personal remedies for breach of the contract. We think this argument proves too much against the position of the defendent in error, considering that the contract in this case is *entire*, and not servable. Why should the defendant pay the assignees damages, which he would not be obliged to pay to the assignor, if no assignment had been made? And besides the assignees take only what is assigned, and if the assignor had or could, or could have had no claim for damages, then no such claim passed by the assignment.

If the assignees take anything by the assignment, they take it entire and *cum onere*, and they cannot be allowed to take it partially; they must accept or reject it *in toto*. But the suit is in the name of the assignor, and he cannot recover for the benefit of assignees and creditors what he could not demand for himself.

Our conclusions are: *First.* That this contract is entire and not severable. *Second.* That the plaintiff did not pay for the timber delivered, though payment was demanded, and that this was a positive and absolute repudiation and abandonment of the contract on his part, giving defendant the right to treat it as rescinded, and to refuse further delivery under it. *Third.* That after such breach by the purchaser, he cannot maintain a suit in his own behalf or in behalf of his assignees to recover damages for non-performance. *Fourth.* That Baars having become disabled to perform by insolvency and an assignment to creditors, neither he nor his assignees could claim damages for a failure to make future delivery of timber under the contract to the assignees with whom he had not contracted.

In view of our further conclusions, it is necessary to examine the pleas in detail and pass upon the sufficiency of each of them. What has already been said will indicate what judgment ought, in our opinion, to be given upon the several demurrers to the pleas. The demurrer to the pleas reaches back to defects in the declaration, and if that is substantially defective it must be amended before an issue of fact can be required of the defendant.

The declaration sets out a contract for the delivery of a quntity of timber, delivery to be made " *as fast as water will permit,* and to be completed not later than 15th June, 1880.".

This condition is material. It is that the " water will permit " performance. If the water would not permit de-

livery, (a contingency here expressly recognized,) the defendant was not bound to deliver, and there would be no breach. He cannot be held to perform what is impossible, when he has expressly stipulated that he would make delivery only in case delivery is practicable on account of the condition of the water. This is the only reasonable construction to be given to this agreement. It is not an absolute contract to deliver in any event, but only so far as water will permit such delivery.

Such being the proper construction of the agreement, it is necessary to show by the declaration what is not therein alleged, that defendant was not prevented by water from making delivery, for otherwise he could not be charged with the breach by neglecting to deliver.

He was not bound to deliver unless the water would permit. In Russell vs. Nicoll, 3 Wend., 112, where Nicoll had sold to Russell 500 bales of cotton, to be delivered on its arrival from New Orleans at New York by the first day of June, to be paid for on delivery, and only eleven bales had arrived at New York, which Nicoll refused to deliver, Russell having sued on the contract alleging failure to deliver, it was held that the contract was executory; that it was entire and Nicoll was not obliged to deliver the eleven bales, the residue not having arrived, and though the time of delivery was named the transfer depended upon the arrival of the cotton, an event not absolutely within the control of either party, and might never happen, and that if the cotton should not arrive by the first of June the plaintiffs were not bound to receive and pay for it, nor the defendants to deliver it.

The principle of that decision is applicable to this agreement in respect to the condition of delivery.

For the defect in this declaration in omitting to allege the possibility of performance according to the terms of

the agreement, the plaintiff in error insists that the demurrers should not have been sustained, and we think he is right.

The judgment is reversed and this cause is remanded with directions that the judgment sustaining the several demurrers be vacated, that said demurrers be overruled, and that the plaintiff be permitted to amend his declaration within such time as may be named, and in default thereof that judgment be given for defendant.