## STANDARD GROWERS EXCHANGE v. HARRIS & SON.

The Court of Appeals propounded certain questions involving the construction of a contract for the sale and purchase of a crop of peaches, and as to whether or not certain facts stated hypothetically would amount to a breach of the contract by the purchaser; also the question as to the right of the seller to bring suit for a breach of the contract without tendering the remainder of the crop after one lot had been rejected in violation of the terms of the contract. These questions are considered and answered in the opinion.

No. 4432. OCTOBER 18, 1924.

The Court of Appeals requested instruction (in Case No. 15210) upon the following questions involved in this case:

1. Where a seller and a purchaser enter into a written contract whereby the vendor agrees to sell and the vendee contracts to buy certain peaches which the instrument describes as "all the crop of good merchantable peaches consisting of approximately 10,000 baskets of Hileys, Georgia Belles, and Elbertas—all the crop of peaches of the season of 1922 grown on the trees" of the seller in a described orchard, "for the sum of $.70 for Hileys, $.70 for Georgia Belles, $.70 for Elbertas, per 5⁄8 Cole picking basket, heaped full delivered purchaser's house" at a described place in this State, and the instrument provides "that the purchaser, his agents and

servants, shall have the right to enter the orchard at any and all seasonable times to examine the fruit, that the fruit to be classed as merchantable hereunder shall be picked in proper condition for shipment, and shall be free from disease or inherent defects, rot, worms, hailpecks, or any imperfection that would prevent the same from carrying in good condition to such markets as Philadelphia or New York," and the contract further provides "that the fruit to be paid for shall be merchantable fruit received, and not the crop as now estimated, and in the event the merchantable fruit received does not amount to as much as the advance, the seller agrees to pay any deficit, the loss by casualty or otherwise, if any, to be the loss of the seller," is the contract, as a matter of law, in the absence of other provisions, to be construed so that the language "free from . . worms" shall be taken to mean that the peaches contracted for should be free from worms to such an extent only as would not "prevent the same from carrying in good condition to such markets as Philadelphia or New York;" or is the language "free from . . worms" to be construed independently of the clause, "or any imperfection that would prevent the same from carrying in good condition to such markets as Philadelphia or New York"?

2.   If the answer to the foregoing question should be that the expression "free from worms" should be construed without reference to any qualification by the language above indicated, is such expression, in the absence of provisions in the contract other than as stated, to be taken with strict literalness, so that the presence of any peach containing "worms" in any basket tendered by the seller to the purchaser under the contract would authorize the purchaser to reject such basket; or should the expression "free from worms" be construed to mean that the peaches should be reasonably "free from worms," but not containing "worms" to such an extent as would render the basket of fruit unmerchantable within the intent of the contract?   Under any proper construction which should be given to the language of a contract such as described above, would it be a jury question as to whether or not any basket of peaches was "free from worms" and "merchantable" within the intent of the contract, the contents of such basket containing no other imperfection and not being otherwise unmerchantable?

3.   Where a contract is entered into such as that described in the first preceding question, providing for the delivery of peaches

by the seller to the purchaser at the latter's packing-house, the same to be delivered in a certain described kind of "picking basket, heaped full," the fruit to be "merchantable" and as described in such contract, should the seller's compliance with the contract specifications for such fruit be tested and determined by the character and condition of each particular basket of tendered peaches, in accordance with the answers to the preceding questions; or should the compliance and tender be tested and determined by the character and condition of each particular peach in a basket. so tendered; or would the purchaser be authorized to reject an entire particular lot of several baskets of peaches as actually tendered, where some, but not all, of the baskets of peaches were subject to rejection?

4. If the answers to the first and second questions preceding shall be in effect that the language "free from worms" should be construed as qualified by the language, "or any imperfection that would prevent the same from carrying in good condition to such markets as Philadelphia or New York," or that such language should be construed to mean "reasonably free from worms" to such an extent as would not render the basket of fruit unmerchantable fruit within the intent of the contract, or that a tender by the seller to the purchaser of any basket of peaches which did not contain more than five per cent. of wormy peaches would not necessarily, as a matter of law, constitute a failure by the seller to comply with the terms of the contract, where. the seller tenders to the purchaser a lot consisting of a certain number of baskets of peaches, and the purchaser then and there rejects such lot for the reason, then and there assigned, that they contain worms and therefore are not a good delivery under the contract referred to in the preceding questions, and the seller then and there states to the purchaser that it can "take all on the contract or couldn't handle any," which proposal the purchaser then and there declines (assuming that the said lot of peaches was tendered and delivered by the seller in proper compliance with the contract), would such a declination by the purchaser, in the absence of any other communications or transactions on the subject between the parties, constitute, as a matter of law, a breach or a tender of breach by the purchaser of the entire contract, covering the remainder of the crop of peaches described in said contract? If so, would it be a condition precedent

to the seller's right of action against the purchaser therefor that the seller should actually tender to the purchaser such remainder of the crop?

*Jones, Park & Johnston,* for plaintiff in error.

*Duncan & Nunn,* contra.

BECK, P. J. A seller and a purchaser entered into a written contract, the vendor agreeing by the terms of the contract to sell and the vendee to buy certain peaches, which the instrument describes as "all the crop of good merchantable peaches consisting of approximately 10,000 baskets of Hileys, Georgia Belles, and Elbertas—all the crop of peaches of the season of 1922 grown on the trees" of the seller in a described orchard, "for the sum of $.70 for Hileys, $.70 for Georgia Belles, $.70 for Elbertas, per ⅝ Cole picking basket, heaped full, delivered purchaser's packing-house" at a described place in this State, and the instrument provides that "the purchaser, his agents and servants, shall have the right to enter the orchard at any and all seasonable times to examine the fruit, that the fruit to be classed as merchantable hereunder shall be picked in proper condition for shipment, and shall be free from disease or inherent defects, rot, worms, hailpecks, or any imperfection that would prevent the same from carrying in good condition to such markets as Philadelphia or New York," and the contract further provides that "the fruit to be paid for shall be merchantable fruit received, and not the crop as now estimated, and in the event the merchantable fruit received does not amount to as much as the advance, the seller agrees to pay any deficit, the loss by casualty or otherwise, if any, to be the loss of the seller." And the first question arising in the construction of this contract is, whether the writing, as a matter of law, in the absence of other provisions, is to be construed so that the language "free from . . worms" shall be taken to mean that the peaches contracted for should be free from worms to such an extent only as would not. "prevent the same from carrying in good condition to such markets as Philadelphia or New York;" or is the language "free from . . worms" to be construed independently of the clause, "or any imperfection that would prevent the same from carrying in good condition to such markets as Philadelphia or New York."

The expression "free from worms" should not be held, in view of other expressions in the contract, to be construed to mean that

the peaches contracted for should be absolutely free from worms, but should be so reasonably free, the character of the commodity considered, as to allow them to be carried in good condition to the markets specified. Nor do we think that the expression "free from worms" should be construed independently of the clause, "or any imperfection that would prevent the same from carrying in good condition to such markets as Philadelphia or New York." To construe the contract otherwise would be equivalent to holding that if there was a single peach infected with worms in each of the picking baskets, the unit of measure stipulated, the presence of such single peach in a basket would authorize the purchaser to reject that entire unit of measure. And if the unit of measure had been larger than the 5⁄8 Cole picking basket (5⁄8 bushel), say a wagon-load containing twenty or thirty baskets, then the presence of a single worm-infected peach in that unit of measure would also authorize the rejection of the wagon-load. It is insisted in the written argument of counsel for the plaintiff in error that it was the obvious intention of the parties to say that each basket of peaches should be free from worms, not relatively free from worms, or reasonably free from worms; that if the parties had intended to insert the word "reasonably," they would have done so, and having failed to do so, they will be deemed to have intended to stipulate that they should be completely free or absolutely free from worms. It is true that the word "free" as used here is an absolute term, if read without reference to the other clauses in the contract or to the commodity and the quantity of the commodity sold. If I should say, exhibiting a single peach to a prospective buyer, "This peach is free from worms," my statement would be a representation that the particular peach exhibited was absolutely free from worms. Or if I should offer a dozen peaches, or even a larger number, making the same statement, that statement might reasonably be treated as a representation that the fruit in question was absolutely free from worms. But if as the owner of a car-load lot of peaches I should state to a prospective buyer that the peaches were free from worms and would carry safely to the New York market, the representation there should not be taken as an absolute representation that every peach in the car-load lot was free from the defect mentioned. Counsel for plaintiff in error say that if the contracting party meant reasonably free from worms, the word "reasonably" might have

12

been put in. To that it might be replied that if it was intended that the expression "free from worms" had the absolute meaning contended for by counsel for plaintiff in error, this might have been put in.

Nor do we think that the language of the stipulation just quoted is to be construed independently of the clause, "or any imperfection that would prevent the same from carrying in good condition to such markets as Philadelphia or New York." If in the contract the word "other" had been used before the word "imperfection" in this last clause quoted, then it might with more force be urged that the expression "free from worms" should be construed independently of the general term "any imperfection."

We are further of the opinion that if any basket of peaches tendered by the seller did not contain more than five per cent. of peaches infected by worms, and the contents of such basket had no other imperfection and were not otherwise unmerchantable, it would be a question for the jury to decide as to whether the peaches were free from worms, within the meaning of the contract, and merchantable within the intent of that instrument.

The foregoing answers questions 1 and 2. It follows from what we have said above that the seller's compliance with the contract specifications for such fruit would not be tested and determined by the character and condition of each particular peach in a basket so tendered. Nor do we think that the purchaser would be authorized to reject an "entire particular lot of several baskets of peaches as actually tendered, where some, but not all, of the baskets of peaches were subject to rejection." In giving this answer as to whether the purchaser would be authorized to reject an entire particular lot of several baskets of peaches, where some, not all, of the baskets were subject to rejection, we have in mind the expression "lot of several baskets," because we can conceive of a lot of peaches, say a car-load, containing such a number of baskets that it would be utterly impracticable to examine the peaches in every basket, and where the purchaser would have a right, after examining a sufficient number of the baskets and finding them all infected, to assume that the lot was infected to such an extent as not to be merchantable. Under the hypothetical statement of facts contained in the fourth question, a declination by the purchaser to take the peaches tendered by the seller in proper compliance with the

contract would amount to a breach or a tender of a breach of the entire contract, and it would not be a condition precedent to the seller's right of action against the purchaser for such breach that the seller should actually tender to the purchaser the remainder of the crop.    *All the Justices concur, except Hines, J., dissenting.*