H. W. METCALF v. R. D. KEENE & COMPANY.

164 So. 704.
Division A.
Opinion Filed December 17, 1935.

*Warlow, Carpenter & Fishback,* for Plaintiff in Error; *Dickinson & Dickinson,* for Defendant in Error.

BROWN, J.—R. D. Keene & Company entered into a written agreement with H. W. Metcalf for the purchase of all good and merchantable grapefruit, tangerines, oranges, and "Valencias" of the early bloom then growing on Metcalf's grove; in return, Metcalf agreed to sell the same for eighty cents a box. All the fruit was to be taken from the grove by February 1st, 1932, except the "Temples" and "Valencias" which were to be taken by March 31st and May 10th of that year, respectively.

The buyer, R. D. Keene & Company, so it is alleged in various pleas, allowed a large part of the grapefruit and tangerines to drop at different periods within the period allowed for picking, and also failed to gather some five hundred boxes of merchantable tangerines which were left on the trees after the time set by contract for removal. In turn, Metcalf sold the remaining Temple and Valencia oranges to another party. Keene & Co. sued Metcalf for breach of contract and Metcalf set up the alleged prior breach by the plaintiff, which he claimed allowed him to abandon the contract; he also pleaded a set-off for the fruit that dropped and the tangerines which remained unpicked.

The trial court sustained demurrers to all these pleas except a plea filed April 17, 1933, which was a plea of set-off,

or more properly, recoupment, for the 500 boxes of merchantable tangerines that remained unpicked after February 1st, 1932, the time limit set for picking and removal of same under the contract. Judgment on demurrer in plaintiff's favor was entered and the jury assessed the damages at $2,106.80.

The first two questions propounded by the plaintiff in error simply amount to the question of whether the contract under consideration is a severable or divisible one, or an entire contract.

The trial court evidently proceeded upon the theory that the contract was divisible, but in our opinion it was entire. Quoting from the contract: "The grower does hereby agree to sell to the purchaser *all* good, merchantable fruit, oranges, tangerines, and Valencias * * * now growing on his grove," and specifies eighty cents a box for each variety respectively. "The grower hereby acknowledges receipt of the sum of one dollar above specified, as the first payment on said fruit, which amount shall be applied on the *total purchase price* * * *. The purchaser shall have up to and including the 1st day of February, 1932, on *all* fruit except Temple oranges and Valencia or late oranges, and they are to be picked, the Temples by March 31st and Valencias by May 10th." They continue to speak of the crop as an entire one, stating how it is to be cultivated as a whole, and if the fruit is not sufficient to pay for advances made by the buyer that "this contract shall remain a lien on the grove," etc.

In this case the contract was for all the fruit or none at the particular price as shown by the fact that 80 cents a box was given for all varieties throughout, regardless of their market or intrinsic value. Doubtless the seller was only willing to sell his valuable fruit for less because he was getting a higher price for his less valuable fruit than he would

otherwise get, and the buyer was willing to pay more for the inferior fruit than he would have if he had not been able to get the more valuable fruit at a discount by buying it altogether; therefore, each variety is made to depend on the other.

Stokes v. Barrs, 18 Fla. 656, holds that failure to pay for one installment is breach of the whole contract and denies the purchaser damages for subsequent non-delivery under the contract.

Producer's Coke Company v. Hillman, *et al.,* (Pa.) 90 Atl. 144: "If, therefore, although the terms of the contract afford the rule for the apportionment of the consideration, yet if there was a special agreement to take the whole or nothing, or if the evidence shows such was the purpose of the parties, then the contract would be entire."

If the defendant had known that the plaintiff was not going to remove the tangerines he certainly woud not have entered into the sale. The Kruse Case (58 N. W.) holds: "If failure to take the whole would have changed the contract, or the parties would not have entered into same had the act been anticipated, makes it an entire contract."

2 A. L. R., 643 notes: "If the seller was unwilling to sell one portion without selling the whole, and the buyer was unwilling to take a part unless he could have the whole, the contract in its nature is entire."

Standard Growers Exchange v. G. O. Harris & Sons (Ga.) 124 S. E. 884: "A declination by the purchaser to take the peaches tendered by the seller in proper compliance with the contract would amount to a breach or tender of a breach of the entire contract and it would be no condition precedent to the seller's right of action against the purchaser for such breach that the seller should actually tender to the purchaser the remainder of the crop." In this case

the contract was worded identically, in many instances, with the present one, but the point here involved was not squarely settled.

2 A. L. R. 666: "A contract may be single, and yet be divisible or apportionable. The fact that the contract is apportionable as to the articles and the payments does not prevent it from being single so that the default of the purchaser in payment for installments will release the seller as to the balance of the contract, at his election. In other words, a contract to deliver goods in installments to be paid for in installments may have a double aspect. In its general features it may be entire, and yet as to the time of delivery and payment it may partake of a severable character. Applying this rule to the right of the seller to rescind for failure of the buyer to accept and pay for an installment, the majority of the cases hold that the buyer's breach of the contract in failing or refusing to receive or pay for an installment of goods entitles the seller to refuse to make further deliveries or to rescind the contract."

Laswell v. National Handle Co., 126 S. W. 969: "Under a contract for the manufacture and sale of different kinds of handles, the failure of the purchaser to take a certain kind of handles, the sale of which was necessary to render the contract valuable to the seller, constitutes a breach of the contract entitling the latter to refuse further deliveries of the handles of the different kinds."

The above case is in point, in principle, that is to say, the sale of the grapefruit and tangerines at 80 cents per box was necessary to render the contract valuable to the seller since the late fruit was worth much more than the grapefruit and the tangerines. To allow the plaintiff to take only that fruit upon which he could make a profit and to leave

the fruit upon which only the defendant could show a profit would be highly unjust and inequitable.

In view of the fact that the price was arrived at only in consideration of the whole; the cultivation was spoken of as pertaining to the grove as a whole; the fruit was spoken of as a whole; the lien to be created in the event that there was insufficient fruit to pay advances made by the buyer was to be on the whole grove; the first payment and advances were to be applied to the crop as a whole; and lastly, the crop price was arrived at by considering the whole. This, in our opinion, makes it an entire contract no matter if the fruit was to be taken in installments.

The third question as propounded by the plaintiff in error involves the question of whether the fact that the contract states that he, the buyer, should take the merchantable fruit off *when he was ready* to remove the same within the time specified, made it incumbent upon him to take the fruit off at any particular time before the specified dates.

The trial court was correct in holding that this question should be answered in the negative. The plaintiff in error attempts to construe the meaning of the word "ready" to mean any time that the defendant in error was physically able to remove the fruit after it became ready for picking, and that it implies a reasonable time. The case cited in support has no definite time limit stated. In this case there is no room for construction; a definite time limit is set by contract for the fruit to be removed and the question of reasonable time does not enter into it. So long as the buyer moved the fruit before the specified date, he would incur no liability, although the fruit might have been dropping in the meantime.

As to his pleas concerning the grapefruit and tangerines that dropped before February 1st, the defendant below was

without remedy and the demurrers to said pleas were properly sustained. As to the 500 boxes of unpicked merchantable tangerines left on the trees on and after February 1st, plea number 2 setting this up as a plea in bar went out on demurrer, but the trial court allowed a set-off therefor under a subsequent plea, holding that the contract was severable and the breach by the plaintiff by not picking the fruit before February 1st was not such a breach as would allow the defendant to abandon the contract. In view of our holding, this amounted to such a breach as precluded the plaintiff from recovering, although the tangerines were a small part of the whole crop. To hold otherwise, on the theory that the contract was severable, would be to misinterpret its evident purpose and allow the plaintiff to disregard the early fruit and yet hold the defendant for the valuable late fruit. Our view is that the contract was entire.

All the pleas in bar were, for one reason or another, defective, and demurrers thereto properly sustained, except the second plea, above referred to. While very brief in its averments, the second plea (p. 10 of transcript) was a good plea, and in sustaining the demurrer thereto, error was committed.

Reversed and remanded.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

ELLIS, P. J. (concurring).—I think the contract was entire and not severable. It was an executory contract of sale for the entire crop of fruit. The purchaser had yet to gather and pay for the fruit and the seller had to care for it in the grove by cultivation. There was no governmental agency interference, nor were there any strikes,

embargoes, quarantines or Act of God to prevent the buyer, who is the plaintiff, from the shipping of the fruit.

The title to the fruit was in the purchaser from the date of the contract. It was his duty to remove it when it became merchantable. As it became merchantable the seller was entitled to receive a certain price per box for it. The contract did not secure to the purchaser the right to allow any fruit to become overripe and spoil so as not to be merchantable merely because the contract placed a limit of time upon him within which he should remove it. The reason for the limitation of time is apparent. It secured payment to the seller for all merchantable fruit within a definite time limit, and the prevention of possible infection of his grove by overripe, decaying and falling fruit.

The purchaser could not under the terms of the contract escape payment for the cheaper fruit at the agreed price and get the benefit of obtaining the better grade of fruit at the contract price by simply allowing cheaper fruit to spoil after it became merchantable and thus transmit the loss incurred thereby to the seller while requiring him also to take the loss on the higher grade of fruit at the contract price. Therefore I think all the pleas were good, and the judgment should be reversed.