658 So.2d 605 (1995)
INDIAN HARBOR CITRUS, INC., Appellant,
v.
L. Ralph POPPELL, Appellee.
No. 93-3283.
District Court of Appeal of Florida, Fourth District.
July 19, 1995.
Rehearing and Rehearing Denied August 30, 1995.
Harold G. Melville of Melville & Fowler, P.A., Fort Pierce, for appellant.
George H. Moss and Lisa D. Harpring of Moss, Henderson, VanGaasbeck, Blanton & Koval, P.A., Vero Beach, for appellee.
Rehearing and Rehearing En Banc Denied August 30, 1995.
WARNER, Judge.
In this appeal we address whether the UCC obligation of "good faith," custom and usage, or course of dealing may be applied to a contract to vary the time of performance. We hold that when the contract is clear and unambiguous, the contract terms may not be varied by resort to those concepts. Therefore, the trial court should have granted a directed verdict for the appellant, and we reverse.
This case concerns a contract for harvesting citrus fruit. The appellant, Indian Harbor (Buyer), agreed to buy, and the appellee, Poppell (Grower), agreed to sell, a crop of grapefruit owned by Poppell. Both parties were knowledgeable business people in the citrus industry. Poppell had signed contracts with Indian Harbor in prior years for the picking of fruit, although in each prior year, the contract had been signed later in the season than the one at issue here. In 1990, however, Poppell had a grove mortgage *606 payment coming due and needed funds in September. He approached Indian Harbor about obtaining an advance on a picking contract to help make the grove payment. When Indian Harbor declined, Poppell received a loan from a bank, securing the loan with the proceeds from the picking contract. The loan was due in January and Poppell testified that Indian Harbor's representative assured him that enough fruit would be picked by January to pay off the loan. Indian Harbor's representative did not recollect this conversation, but in any event, it occurred prior to the signing of the contract.
Under the terms of the contract Indian Harbor agreed to buy all of the fruit in Poppell's grove which was of merchantable quality at the time of picking. The Buyer was responsible for picking the fruit, which "shall be picked ... on or before March 15, 1991." This date was initially April 21, but the parties initialled a change to March 15. The contract specified a per box price. The contract stated that "Title to fruit covered by this Contract shall remain with Grower until actual delivery to Buyer ..." Moreover, the Buyer did not assume any responsibility for any natural disaster, and "in the event of damage by conditions beyond Buyer's control which renders the fruit, or any material portion thereof, unsuitable for sale in its fresh form, Buyer may, at its option cancel this Contract... ." According to the testimony, all of the fruit met the standard of merchantability at the time the contract was signed in September 1990. While Poppell repeatedly asked Indian Harbor to commence picking the fruit, Indian Harbor determined that the fruit was not large enough to satisfy its fresh fruit market. Sometime in December fruit began to drop from the trees, causing waste. Instead of picking the fruit, Indian Harbor treated it with spray for shipment to Japan. This required the fruit to remain on the trees for an additional month. Poppell continued to demand that Indian Harbor pick the fruit.
In mid-February, a windstorm damaged the fruit. Because of fruit damage during the windstorm, Indian Harbor waited on picking to allow the fruit to recover from bruising. However, in the beginning of March a second windstorm created even more damage. Poppell demanded that Indian Harbor pick his fruit by the fifteenth of the month, even though the grove showed significant damage and another waiting period of some weeks was necessary to determine the extent of the damage. Because Poppell was unwilling to extend the picking time, Indian Harbor exercised its option under the natural disaster clause to cancel the contract. Poppell harvested the fruit through other pickers and then sued Indian Harbor for the damages sustained by its cancellation of the contract.
Poppell claimed that the custom of the industry called for the buyer to "spot pick" the grove, by which some of the fruit is removed so that the remaining fruit can grow larger. Had Indian Harbor undertaken spot picking, according to Poppell, less fruit would have fallen to the ground and wasted, and he would have received more proceeds earlier in the term of the contract. Moreover, Poppell also testified that his course of dealing with Indian Harbor in prior contracts established a practice of spot picking to maximize fruit potential. Finally, Poppell also contended that the doctrine of "good faith" under the Uniform Commercial Code required Indian Harbor to be responsible for the losses that Poppell suffered from the depleted crop, because Indian Harbor in good faith should have picked the fruit earlier.
These theories cannot be used to vary the terms of an unambiguous contract. It has already been held that "while custom or usage may be employed in explanation and qualification of terms of a contract that would otherwise be ambiguous, it cannot operate to contravene express instructions or to contradict an express contract to the contrary." Iden v. Kasden, 609 So.2d 54, 56 (Fla. 3d DCA 1992), review denied, 620 So.2d 761 (Fla. 1993); Roe v. Henderson, 139 Fla. 386, 190 So. 618 (1939). Similarly, good faith and course of dealing cannot override express contract terms. Flagship Nat'l Bank v. Gray Distribution Systems, Inc., 485 So.2d 1336, 1340 (Fla. 3d DCA), review denied, 497 So.2d 1217 (Fla. 1986).
The contract in this case was unambiguous. It required that Indian Harbor pick the grove "on or before March 15, 1991." *607 Title to the fruit did not pass to Indian Harbor until delivery, i.e., picking. In a case very similar to the present one, where fruit was dropping during the time of the contract and prior to its picking by the buyer, the supreme court held that a contract which required that all the fruit be picked from the groves by February 1, 1932, was for a definite time, and "[s]o long as the buyer moved the fruit before the specified date, he would incur no liability, although the fruit might have been dropping in the meantime." Metcalf v. R.D. Keene & Co., 122 Fla. 27, 164 So. 704, 706 (1935). While Metcalf predates the adoption of the Uniform Commercial Code, there is nothing in the Code that varies Metcalf's result.
Poppell's sole argument is that the contract was ambiguous, so resort to good faith and custom and usage as extrinsic evidence is permissible to explain the contract. Yet he has not pointed us to any case which interprets the phrase "on or before" the date of performance as requiring the buyer to perform the contract earlier than the last date of performance. He argues instead that the grove could not be picked in one day, so the contract required picking to take place before the March 15 deadline. That, however, does not compel the buyer to pick at any particular time before the deadline. If Indian Harbor through its own fault failed to pick the entire grove by March 15, then Poppell might have been entitled to sue it for damages if he could not get the contract price for the unpicked fruit. But as Poppell himself admitted, nothing in the contract required Indian Harbor to pick the fruit before March 15.
Poppell and Indian Harbor negotiated the picking contract in September for a crop that in the past had not been harvested until February or later. At the time, Poppell needed money for a grove mortgage payment. He had several buyers looking at his fruit. In the end Poppell negotiated this agreement with Indian Harbor. Perhaps Indian Harbor offered the best price for the fruit but required a longer picking time. We do not know. Nevertheless, the contract was the product of knowledgeable business people negotiating in their own self interest. Poppell could have negotiated an even earlier date or placed the risk of loss on the buyer. He elected to sign the contract presented with only a change in the time of performance. The parties having negotiated a fully specified, unambiguous contract, this court is not at liberty to change their bargain.
Reversed and remanded for entry of a judgment in favor of the appellant.
DELL and SHAHOOD, JJ., concur.
(NOTE: SHAHOOD, J., was substituted after oral argument but has reviewed the proceedings.)