Arthur NICKENS, Plaintiff–Appellant,

v.

Jimmy MELTON, Correctional Officer, Defendant–Appellee.

No. 93–7356.

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 16, 1994.

Arthur Nickens, pro se.

Before JOHNSON, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Arthur Nickens (Nickens), a prisoner in a Mississippi correctional facility, appeals from the district court's dismissal of his 42 U.S.C. § 1983 action as

1. On appeal, Nickens' *pro se* brief alleges the date is July 25, 1991.

2. Nickens states he is a "writ-writer" and, as a result, that some of the legal documents belong to other prisoners.

frivolous, pursuant to 28 U.S.C. § 1915(d). Nickens alleges that Mississippi does not provide adequate post-deprivation relief to prisoners suing *in forma pauperis.* We affirm.

## Facts and Proceedings Below

In his *pro se* complaint, Nickens alleges that on July 11, 1991,[1] defendant-appellee, Mississippi prison guard Jimmy Melton (Melton), searched Nickens' cell during a "shakedown" at the Parchman Penitentiary and confiscated legal documents[2] and personal items.[3] Thereafter, on July 29, 1991, Nickens filed a civil lawsuit pursuant to 42 U.S.C. § 1983 in federal district court alleging that Melton had violated his Fourteenth Amendment rights by taking his property without due process of law. On March 10, 1993 the district court determined that the state of Mississippi provided Nickens with adequate post-deprivation relief and dismissed the case as frivolous pursuant to 28 U.S.C. § 1915(d).

## Discussion

■ On appeal Nickens argues that Mississippi does not provide indigent civil litigants, seeking to sue *in forma pauperis* (IFP), adequate post-deprivation relief. As this issue involves a legal conclusion, we review the district court's ruling *de novo. Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982).

■ In *Hudson v. Palmer,* the Supreme Court determined that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984). Nickens, citing the Mississippi Supreme Court decision in *Nelson v. Bank of Missis-*

3. Personal items Nickens claims were confiscated include: three typewriter springs; one typewriter carriage lever screw; two small typewriter screws; one rubber pad for a typewriter cover; eight ballpoint pens; one table salt container; one yellow highlighter; and one wrist-watch battery. Nickens estimated the cost of these items at approximately $12.00.

*sippi*, 498 So.2d 365, 366 (Miss.1986), alleges that Mississippi does not provide adequate post-deprivation remedies to indigent litigants. In *Nelson*, Mississippi's high court determined that indigent civil litigants have no right to appeal IFP. *Id.*

Pursuant to Mississippi law, a citizen may commence any civil action IFP if they submit an affidavit attesting to their impoverished state. MISS.CODE ANN. § 11–53–17 (1993). Nickens could have initiated a suit for conversion against Melton in a state trial court. *See Masonite Corp. v. Williamson*, 404 So.2d 565, 567 (Miss.1981) (recognizing a cause of action for conduct in which there is an intent to exercise dominion or control over goods inconsistent with the true owner's rights). Thus, under Mississippi law, Nickens did have the right to proceed IFP at the trial court level. Therefore, the question is whether this constitutes "a meaningful post-deprivation remedy" for IFP litigants.

■ It is well established that "if a full and fair trial on the merits is provided, the Due Process Clause of the Fourteenth Amendment does not require a State to provide appellate review." *Lindsey v. Normet*, 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972); *see also District of Columbia v. Clawans*, 300 U.S. 617, 626, 57 S.Ct. 660, 663, 81 L.Ed. 843 (1937) (ruling that "due process does not comprehend the right of appeal"); *Ohio ex rel. Bryant v. Akron Metro. Park Dist.*, 281 U.S. 74, 77, 50 S.Ct. 228, 230, 74 L.Ed. 710 (1930) (noting that "the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance"). Under Mississippi law, an indigent litigant, such as Nickens has a right to initiate a suit and prosecute it to conclusion in the trial court on an IFP basis. Thus, Mississippi "provide[s] a procedure, not conditioned on payment of any fee, through which [an indigent litigant would] have been able to seek redress." *Ortwein v. Schwab*, 410 U.S. 656, 658, 93 S.Ct. 1172, 1174, 35 L.Ed.2d 572 (1973).[4] Hence, Mississippi's post-deprivation remedies for civil IFP litigants satisfy due process.[5]

■ With respect to the Equal Protection Clause, we note that IFP litigants are not a suspect class since "[n]o suspect classification such as race, nationality, or alienage, is present." *Ortwein*, 410 U.S. at 660, 93 S.Ct. at 1175. Consequently, the standard to be applied is whether Mississippi's rule requiring a prepayment of cost for appeal is "rationally related to a legitimate government interest." *Wayne v. Tennessee Valley Authority*, 730 F.2d 392, 404 (5th Cir.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985).

The purpose of Mississippi's rule requiring civil litigants to prepay appellate cost is obvious. The prepayment of costs for a civil appeal helps Mississippi offset the expenses associated with operating its appellate court system. Thus, Mississippi's rule for civil appellate litigants is rationally justified. *See*

---

4. In *Ortwein*, the Supreme Court held that Oregon's requirement that all civil litigants pay an appellate filing fee was not violative of the due process rights of welfare recipients seeking to appeal adverse welfare decisions. *Id.*, 410 U.S. at 658–62, 93 S.Ct. at 1174–75.

5. We note that the interest here at stake (the right to appeal a civil damage suit) is not as fundamental as, for example, marriage or liberty (in the sense of freedom from imprisonment). *See Boddie v. Connecticut*, 401 U.S. 371, 381–84, 91 S.Ct. 780, 788–89, 28 L.Ed.2d 113 (1971) (ruling due process prohibits a state from denying indigents *any* access to the divorce courts, the only way in which a marriage could be dissolved, solely due to inability to pay) and *Griffin v. Illinois*, 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956) (ruling that if a right of appeal is granted by statute, due process and equal protection requires procedures afforded be

fair and adequate for indigent criminals). In the instant case, Nickens' interest "has far less constitutional significance" than the interest of the appellants in *Boddie* and *Griffin*. *Ortwein*, 410 U.S. at 658, 93 S.Ct. at 1174. Moreover, unlike *Boddie*, here IFP is allowed through trial; there *is* access to the courts.

*See also*, THE CONSTITUTION OF THE UNITED STATES OF AMERICA, ANALYSIS AND INTERPRETATION, Congressional Research Service, Library of Congress (1982):
"The *Boddie* opinion left unsettled whether a litigant's interest in judicial access to effect a pacific settlement of some dispute was an interest entitled to some measure of constitutional protection as a value of independent worth or whether a litigant must be seeking to resolve a matter involving a fundamental interest in the only forum in which any resolution was possible. Subsequent decisions established that the latter answer was the choice of the Court." *Id.* at 1806.

*Ortwein,* 410 U.S. at 660, 93 S.Ct. at 1175 (finding Oregon's appellate fee for civil litigants rationally justified); *United States v. Kras,* 409 U.S. 434, 445, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973) (finding that the federal bankruptcy court filing fee was rational).

We find that the post-deprivation remedies provided by the state of Mississippi are meaningful.[6] Accordingly, the district court's order is

AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

In *Hudson v. Palmer,* the United States Supreme Court determined that a state's intentional deprivation of personal property does not violate an individual's procedural due process rights *as long as that state provides the inmate with a meaningful post-deprivation remedy.* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984).

The question, then, for this Court becomes whether the State of Mississippi provides meaningful post-deprivation relief to state court litigants *either* by limiting them exclusively to the trial court forum *or* by providing a separate state administrative forum. This same question was considered by this Court in the unpublished opinion of *Young v. Williams,* 956 F.2d 264 (5th Cir.1992). Young filed suit in forma pauperis in a Mississippi state court for wrongful deprivation

---

**6.** In our unpublished opinion in *Corley v. Black,* 996 F.2d 307 (5th Cir.1993), we held that Corley, a Mississippi indigent, was barred from bringing a section 1983 action by a prior adverse Mississippi trial court judgment. We stated that despite Corley's having been unable to appeal the prior state court judgment due to his indigency and because Mississippi did not authorize civil IFP appeals, "[u]nder Mississippi law, Corley was given a full and fair opportunity to litigate the claims he attempts to raise in federal court."

Our unpublished opinion in *Young v. Williams,* 956 F.2d 264 (5th Cir.1992), dealt with the appeal of Mississippi prisoner Young from the district court's § 1915(d) dismissal, on the basis that there was an adequate state lawsuit remedy, of Young's § 1983 suit against state officials regarding confiscation of his property. We noted Young's assertion that

"he filed a 'Motion to Show Cause' in state circuit court, contending he had been intentionally deprived of his property without due process, denied equal protection, and subjected to an illegal search.... the state circuit court judge, *sua sponte,* summarily dismissed his complaint. (Young does not state the reason given for the dismissal, nor is his state court pleading or the state court's dismissal order included in the record.) ... the state court denied Young's request to appeal the dismissal *in forma pauperis* (IFP), holding that, pursuant to *Nelson v. Bank of Mississippi,* 498 So.2d 365 (Miss.1986), the right to proceed IFP in a civil case applies only at the trial level."

We went on to state

"Young contends that he has not been afforded an adequate post deprivation remedy, because his state court action was summarily dismissed and he was denied an IFP appeal. The *record* before this court *is,* as noted, *lacking* in important detail. Accordingly, we are unable to conclude, at this time, *whether* the complaint is frivolous under § 1915(d)." (emphasis added).

We ultimately reversed and remanded, noting that "[o]ur ability to address these issues is inhibited greatly by the lack of a response by the state, which had not appeared because the defendants were not served with process."

*Young* is clearly not controlling here. There we plainly *refrained* from deciding the "meaningful post deprivation remedy" issue because the record was inadequate. It is evident that our concern related to the asserted *sua sponte* summary dismissal by the state trial court, which Young's indigency prevented him from challenging on appeal. We doubtless had in mind the italicized qualification in *Lindsey's* statement that *"if a full and fair trial on the merits is provided,* the Due Process Clause ... does not require a State to provide appellate review." *Id.,* 405 U.S. at 76, 92 S.Ct. at 876 (emphasis added). That consideration appears to have precluded our determining that Young's case had no *arguable* basis in law. *Cf. Neitzke v. Williams,* 490 U.S. 319, 327–31, 109 S.Ct. 1827, 1833–34, 104 L.Ed.2d 338 (1989).

No such concerns are present here. Unlike Young, Nickens never even attempted to invoke his state judicial remedies, and can not possibly argue that he was denied "a full and fair trial on the merits." As we said in *Myrick v. City of Dallas,* 810 F.2d 1382, 1388 (5th Cir.1987), a section 1983 plaintiff "cannot skip an available state remedy and then argue that the deprivation by the state was the inadequacy or lack of the skipped remedy."

The result here as to the lack of IFP appeal issue follows *a fortiori* from *Ortwein,* which unarguably establishes the relevant law as to that issue. And, we note that *Ortwein* was a *per curiam* affirmance without oral argument. As Justice Stewart noted in his dissent there "the Court is so resolutely firm in its ... view that it would serve no useful purpose to set this case for oral argument." *Id.,* 410 U.S. at 660, 93 S.Ct. at 1175.

of property by a state actor. *Id.* The case was dismissed sua sponte, Young appealed, and the state appellate court dismissed the appeal on the ground that Young could not proceed in forma pauperis at the state appellate level. *Id.*

Young then filed a section 1983 cause of action in federal court and again asserted the wrongful deprivation of his property. *Id.* The federal district court in *Young,* as the federal district court in this case, dismissed the suit as frivolous. *Id.* This Court reversed and remanded the *Young* case to the district court for the purpose of determining whether Mississippi inmate grievance procedures provided adequate post-deprivation remedies. *Id.* This remand was grounded on the implicit premise that Mississippi courts could not provide an adequate post-deprivation remedy since no appeal was available to the in forma pauperis litigant. *See id.*

In the present case, the record reflects that post-deprivation administrative remedies were available to Mr. Nickens in the prison. *See* Record at 2. What the record does not indicate is what those administrative remedies consisted of. While there is no exhaustion of remedies requirement for section 1983 cases, the available state administrative and judicial remedies become relevant to evaluate the adequacy of the available state remedies. *See Hudson,* 468 U.S. at 535–36, 104 S.Ct. at 3204–05. The present record presents no indication of what the administrative remedies available in the State of Mississippi's prison system did or did not include.

Thus, this case should be remanded to the district court so that the court might hear evidence as to whether Mississippi had inmate grievance procedures capable of providing adequate post-deprivation remedies. Until a determination is made as to the adequacy of those procedures, this Court need not proceed to address whether wholly denying in forma pauperis appeals renders state judicial remedies inadequate.[1]

1. It is the belief of this writer that the State of Mississippi cannot rely on its judicial system *alone* in order to fulfill the meaningful state post-deprivation remedy requirement. Contrary to the majority's view, this writer sees no rational basis for distinguishing between in forma pauperis civil litigants and other litigants for appellate purposes. The fact that a litigant is proceeding in forma pauperis in and of itself is no basis to conclude that the individual's appeal is any more or less meritless. *See Evitts v. Lucey,* 469 U.S. 387, 400–01, 105 S.Ct. 830, 838–39, 83 L.Ed.2d 821 (1985) ("The right to appeal would be unique among state actions if it could be withdrawn without consideration of applicable due process norms."); *Lindsey v. Normet,* 405 U.S. 56, 74–75, 92 S.Ct. 862, 874–75, 31 L.Ed.2d 36 (1972) (finding an equal protection violation for a state requirement that only forced appellants with FED claims to pay a double appellate bond); *Draper v. Washington,* 372 U.S. 487, 496, 83 S.Ct. 774, 779, 9 L.Ed.2d 899 (1963) ("In all cases the duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with funds—the State must provide the indigent defendant with means of presenting his contention to the appellate court which are as good as those available to a nonindigent defendant with similar contentions."); *Burns v. Ohio,* 360 U.S. 252, 257–58, 79 S.Ct. 1164, 1168–69, 3 L.Ed.2d 1209 (1959) (finding no rational basis to believe that an indigent's appellate claims were any less meritorious than any other appellate claims); *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) ("It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty.") (cites omitted); *Martin v. Dallas Co., Tex.,* 822 F.2d 553, 555 (5th Cir.1987) (finding adequate post-deprivation remedy for § 1983 purposes "through the right of appeal …."); *Holloway v. Walker,* 784 F.2d 1287, 1291 (5th Cir.), *cert. denied,* 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 576 (1986) (finding the opportunity to appeal from state court judgment made the state's post-deprivation remedy adequate).

Section 1983 actions frequently come before the district courts—state and federal—in forma pauperis. Such in forma pauperis cases present unique complications and problems to the district courts. Given the complexity of in forma pauperis actions coupled with the general overcrowding of state court dockets, there is a substantial incentive for district judges to dismiss these cases on frivolity grounds. Without meaningful appellate review, many § 1983 in forma pauperis inmates may fall victim to an occasional, overly-enthusiastic docket control.

Trial court judges generally do an outstanding job in managing overloaded dockets which contain more than a few frivolous complaints. Despite the vast majority of district court orders being well-reasoned decisions, there will be a substantial minority of cases in which some of the actions taken by the district judge could be classified as arbitrary and/or capricious. This is the primary reason why the appellate system has

Accordingly, this dissent is respectfully tendered.

been put in place—to create a full spectrum of judicial review. The full functioning of the judicial system should not be contingent upon the financial well-being of the litigants.