OHIO ex rel. BRYANT *v.* AKRON METROPOLITAN PARK DISTRICT et al.

OHIO ex rel. WADSWORTH *v.* ZANGERLE et al.

Nos. 237 and 238. Argued February 27, 28, 1930.—Decided March 12, 1930.

*Messrs. Frederick A. Henry* and *Luther Day,* with whom *Mr. George D. Hile* was on the brief, for appellants.

*Messrs. Chester L. Dinsmore, Frederick W. Green, Joseph A. H. Myers* and *William A. Spencer* were on the brief for the Akron Metropolitan Park District et al., appellees.

*Messrs. Frederick W. Green, Newton D. Baker, William C. Boyle* and *Thomas M. Kirby* were on the brief for Zangerle et al., appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

These two cases were argued together and present substantially the same questions. Each suit was brought in the state court by a taxpayer attacking the validity of the Park District Act of the State (General Code of Ohio, secs. 2976–1 to 2976–10i; 107 O. L. 65–69, 108 O. L., pt. 2, 1097–1100). The one suit related to the Park District Board of the Akron District, and the other to that of the Cleveland District, and in each suit the taxpayer sought an injunction against the Park Boards, respectively, together with the auditor of the county where the Board revenues and disbursements are handled, from expending public moneys, or incurring obligations requiring such expenditure, and from taking any other official action on behalf of the district. The statute was assailed as being in violation of the constitution of the State and also of the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution. The

validity of the act was sustained by the Court of Common Pleas, and by the Court of Appeals, of the counties where the suits were brought. On error proceedings from these judgments, the cases were heard together in the Supreme Court of the State, and that court was divided in opinion, two of the justices holding the statute to be valid, and five of them being of the contrary view. Section 2 of Article IV of the constitution of Ohio provides that " no law shall be held unconstitutional and void by the Supreme Court without a concurrence of at least all but one of the judges, except in the affirmance of a judgment of the Court of Appeals declaring a law unconstitutional and void." Accordingly, in these suits, the judgments in favor of the defendants were affirmed by the Supreme Court and, thereupon, motions were made in that court to vacate the judgments and to enter judgments of reversal. It was then alleged that the above-mentioned provision of the constitution of the State was in conflict with the Fourteenth Amendment of the Federal Constitution in that it denied to citizens of Ohio due process of law and the equal protection of the laws, and also that the provision was repugnant to Section 4 of Article IV of the Federal Constitution assuring to every State a republican form of government. The Supreme Court of the State overruled the motions, and from the judgments of affirmance, and the orders denying the motions to vacate, appeals have been taken to this Court.

The grounds for attack, under the Fourteenth Amendment, on the validity of the Park District Act relate to the organization and powers of the Park District Boards. The act provides for the presentation to the probate judge of the county of a petition for the establishment of the proposed district and, after notice and hearing, the probate judge, with or without diminishing or altering, but without enlarging, the suggested boundaries, is to enter an order creating the district, provided he finds the

proceedings to be regular and that the creation of the district will be conducive to the general welfare. The probate judge is then to appoint three commissioners who are to constitute the Board of Park Commissioners of the district, being a body politic and corporate. The Board thus constituted is to have power to acquire lands within the district for the conservation of its natural resources and, to that end, may create parkways, parks and other reservations of land, and develop, improve and protect the same in such manner as they may deem .conducive to the general welfare. The Board is authorized to lay assessments upon specially benefited lands in an amount not exceeding, and in proportion to, the special benefits conferred by the development or improvement. The Board is also authorized to levy taxes upon all taxable property within the district in an amount not in excess of one-tenth of one mill upon each dollar of the assessed value of the property in the district in any one year, subject, however, to the combined maximum levy for all purposes otherwise provided by law. On further petitions, and on the determination by the Park Board of the advisability of the annexation of additional territory, whether located within or without the county in which the district is created, the probate court of the county within which the additional territory is located, in proceedings similar to those originally instituted, may provide for such annexation. The Board is also authorized to adopt by-laws, rules and regulations for the preservation of good order within and adjacent to the parks and reservations of land under their jurisdiction and of property and natural life therein. The violation of such by-laws, rules or regulations constitutes a misdemeanor. The Board may submit to the electors of the district the question of levying additional taxes for the use of the district, declaring the necessity of such levy, the purpose for which the taxes are to be used, the annual rate proposed and

the number of consecutive years that such rate shall be levied. If a majority of the electors voting upon the question favor the levy, such taxes shall be levied accordingly, provided the rate submitted to the electors at any one time shall not exceed one-tenth of one mill annually upon each dollar of valuation. The Board is empowered to issue bonds, in anticipation of the collection of such levy, for the purpose of acquiring and improving lands.

It was insisted by the taxpayers, plaintiffs in the state court, that these statutory provisions involved an unconstitutional delegation of legislative power to the probate court and to the nonelective park commissioners. We do not consider it necessary to consider at length this objection, or the other points sought to be made against the statute under the Fourteenth Amendment, as, in view of the repeated decisions of this Court, we do not find any substantial Federal question presented. *Houck* v. *Little River Drainage District,* 239 U. S. 254, 262; *Orr* v. *Allen,* 245 Fed. 486, 248 U. S. 35; *Soliah* v. *Heskin,* 222 U. S. 522.

The question with respect to the validity, from a Federal standpoint, of the provision of the state constitution that no law shall be held unconstitutional by the Supreme Court of the State without a concurrence of at least all but one of the judges, except in the affirmance of a judgment of the Court of Appeals declaring a law unconstitutional, was not raised in these suits until after the judgments of affirmance by the Supreme Court. But it is insisted that the point could not have been taken earlier, as in advance of the affirmance on a vote of the minority the question would have been speculative. Hence, it is said that the Federal question was raised at the earliest opportunity. (*Saunders* v. *Shaw,* 244 U. S. 317, 320.) Assuming that the Federal question is thus brought here, we find it to be without merit.

As to the guaranty to every State of a republican form of government (Sec. 4, Art. IV), it is well settled that the

questions arising under it are political, not judicial, in character and thus are for the consideration of the Congress and not the courts. *Pacific States Telephone & Telegraph Co.* v. *Oregon,* 223 U. S. 118; *O'Neill* v. *Leamer,* 239 U. S. 244, 248; *State of Ohio ex rel. Davis* v. *Hildebrant, Secretary of State of Ohio,* 241 U. S. 565; *Mountain Timber Co.* v. *State of Washington,* 243 U. S. 219, 234.

As to the due process clause of the Fourteenth Amendment, it is sufficient to say that, as frequently determined by this Court, the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance. *McKane* v. *Durston,* 153 U. S. 684, 687; *Pittsburgh, etc. Railway Co.* v. *Backus,* 154 U. S. 421, 427; *Reetz* v. *Michigan,* 188 U. S. 505, 508; *Rogers* v. *Peck,* 199 U. S. 425, 435; *Standard Oil Company of Indiana* v. *State of Missouri,* 224 U. S. 270, 286. The opportunity afforded to litigants in Ohio to contest all constitutional and other questions fully in the Common Pleas Court and again in the Court of Appeals plainly satisfied the requirement of the Federal Constitution in this respect and the State was free to establish the limitation in question in relation to appeals to its Supreme Court in accordance with its views of state policy.

In invoking the equal protection clause of the Fourteenth Amendment, it is argued that the result of the application of the provision of the state constitution may be that the same statute may be held constitutional in a case arising in one county, and unconstitutional in another case arising in another county. This point is obviously not of importance in relation to the question of the validity of the Park District Act under the Federal Constitution, as the Act of Congress makes appropriate provision for the hearing and determination by this Court of such a question where a Federal right has been passed upon by the highest court of the State in which a deci-

sion could be had. But it is said that, from the standpoint of the state constitution, the statute may operate unequally. It is unnecessary to comment on this point so far as the mere inconvenience which may be caused by possible conflicts is concerned. It is urged that the situation has been described as deplorable by the Supreme Court of the State (*Board of Education* v. *Columbus,* 118 O. S. 295) but it is not for this Court to intervene to protect the citizens of the State from the consequences of its policy, if the State has not disregarded the requirements of the Federal Constitution. In the present instance, there has been as yet no conflict of decision. The provision of the state constitution which is attacked is one operating uniformly throughout the entire State. The State has a wide discretion in respect to establishing its systems of courts and distributing their jurisdiction. It has been held by this Court that the equal protection clause of the Fourteenth Amendment is not violated by diversity in the jurisdiction of the several courts of a State as to subject matter or finality of decision if all persons within the territorial limits of the respective jurisdictions of the state courts have an equal right in like cases under like circumstances to resort to them for redress. A State "may establish one system of courts for cities, and another for rural districts, one system for one portion of its territory, and another system for another portion." *Missouri* v. *Lewis,* 101 U. S. 22, 30, 31. Different courts of appeal may be set up for different portions of the State. *Id.,* p. 33. It is thus well established that there is no requirement of the Federal Constitution that the State shall adopt a unifying method of appeals which will insure to all litigants within the State the same decisions on particular questions which may arise. *Missouri* v. *Lewis, supra; Pittsburgh etc. Railway Co.* v. *Backus,* 154 U. S. 421, 427; *Mallett* v. *North Carolina,* 181 U. S. 589, 597–599.

*Judgments affirmed.*