Clifton **BYRD** et al.,
Plaintiffs-Appellants,

v.

**CITY OF SAN ANTONIO, TEXAS** et al., Defendants-Appellees.

No. 77–1014.

United States Court of Appeals,
Fifth Circuit.

Jan. 2, 1979.

Rehearing and Rehearing En Banc
Denied Feb. 2, 1979.

Craig L. Austin, San Antonio, Tex., for plaintiffs-appellants.

F. W. Baker, Jon C. Wood, Crawford B. Reeder, Asst. City Atty., Jane H. Macon, City Atty., San Antonio, Tex., for defendants-appellees.

Before GEE and VANCE, Circuit Judges, and HUNTER,* District Judge.

EDWIN F. HUNTER, Jr., District Judge:

Plaintiffs instituted this suit to redress the alleged deprivation of federal constitutional and statutory rights. It is in essence a frontal attack upon what plaintiffs refer to as "self perpetuation of the control and management of a municipal bureaucracy, the City Public Service Board of San Antonio." They contend that the procedure utilized in selecting Board members deprives them of their right to vote, and constitutes a denial both of Equal Protection [1] and the right to a Republican Form of Government.[2] The district court dismissed the action, finding that each claim alleged was, as a matter of law, wholly without merit. We AFFIRM.

## I. FACTUAL BACKGROUND

In 1942, the City of San Antonio acquired ownership of the gas and electric utility system in that city. This purchase was financed by the proceeds from the sale of $33,950,000 first mortgage bonds. The bonds were issued pursuant to Article 1111, et seq., of the Texas Civil Statutes, which allow Texas cities to purchase utility systems through the issuance of bonds secured by a pledge of the revenues from operation of the systems, provided that such obligations shall never be a debt of the City but solely a charge upon the revenues of the encumbered systems. Article 1115 provides for the management and control of such systems during the time of encumbrance to be placed either in the City Council or in a Board of Trustees, to be named in the contract of encumbrance, having not more than five members, one of whom must be the mayor of the city. The statute further provides:

> The terms of office of such board of trustees, their powers and duties, the manner of exercising same, the election of their successors, and all matters pertaining to their organization and duties may be specified in such contract of encumbrance.

Pursuant to this authority, the Trust Indenture securing the original issue of bonds vested management of the systems in a five-member board, including the mayor as an ex officio member. The other initial members were appointed by the City Council. Any vacancy on the Board is filled by a majority vote of the remaining board members. The term of membership is fixed at five years. The individual members of the Board cannot "perpetuate" themselves in office because the indenture limits members to two terms of service. This 1942 indenture, authorized by an ordinance of the City Council, was superseded by an indenture dated February 1, 1951, also adopted as an ordinance, and contained identical selection provisions. The 1951 indenture was amended by seven supplemental indentures, each duly authorized by a city ordinance. The management provisions of the 1951 indenture were incorporated by reference into each supplemental indenture. The three most recent issues of revenue bonds occurred in 1975, 1976 and 1977. These are

---

* United States Senior District Judge for the Western District of Louisiana, sitting by designation.

1. United States Constitution, Amendment XIV, § 1.

2. United States Constitution, Article IV, § 4.

referred to as "New Series" Revenue Bonds and were issued under ordinances authorizing a Board selection method different from that prescribed in the 1951 indenture. The new procedure may be utilized only upon the payment of all the Old Series Bonds.[3]

■ The basic claim of constitutional deprivation is premised on the presumption that the Board is "a form of government" subject to strictures of republicanism and federal voting controls. This premise is incorrect. The only "governmental body" of San Antonio to which the constitutional and statutory provisions urged by appellants would apply is the City Council. Only it can issue bonds for extending or improving the system. Only the Council can review, revise or set rates. Only the Council can authorize condemnation of land. The district court's holding that the Board

> "is not a form of government but is a board of managers of the municipally-owned San Antonio Electric and Gas system held and operated as a corporate and proprietary activity of the City of San Antonio"

is precisely correct. See *San Antonio Independent School District v. City of San Antonio*, 550 S.W.2d 262, 264 (Tex.1976).

There is no statute or constitutional provision which requires election—or appointment by elected officials—of the persons who carry out this proprietary and non-governmental function. The appellants cite neither judicial nor statutory law which would hold that the officers in question are legislative officers under the appropriate federal standards, or that their selection by the methods appellants urge would be required as a matter of law.[4] See *Sailors v.*

*Board of Education*, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967); *Rosenthal v. Board of Education*, 385 F.Supp. 223 (E.D. N.Y., 1974), aff'd. 420 U.S. 985, 95 S.Ct. 1418, 43 L.Ed.2d 667 (1975); *Benner v. Oswald*, 444 F.Supp. 545 (M.D.Pa., 1978).

Appellants insist that the vacancy selection procedure denies them the Republican Form of Government guaranteed by the Constitution, because the Board has been effectively removed from direct or indirect accountability to the electorate. The Supreme Court has consistently held that the Guaranty Clause is primarily political in nature, and its enforcement is a matter for Congress rather than the courts. *Pacific States Telephone & Telegraph Co. v. Oregon*, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (1912); *Ohio ex rel. Bryant v. Akron Metropolitan Power District*, 281 U.S. 74, 50 S.Ct. 228, 74 L.Ed. 710 (1930); *Colegrove v. Green*, 328 U.S. 549, 556, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946). Someday, in certain circumstances, the judicial branch may be the most appropriate branch of government to enforce the Guaranty Clause.[5] This is definitely not such a case.

■ The City Public Service Board does not usurp from the City of San Antonio nor can it, as a matter of law, exercise in its own right any governmental powers which would result in constituting it either a "form of government" or a "governmental body." In the area in which we are involved—federal constitutional and statutory law—we find no support for plaintiffs' contentions. They insist that the ordinances and indentures, pursuant to which the Council delegated to the remaining members of the Board the power to fill

3. We are not suggesting that the City of San Antonio is powerless to change the existing selection process now. Indeed, it has consistently expressed its preference to retain the present selection procedure until all of the Old Series bonds have been retired. There are now $195,000,000 in bonds still outstanding which contain the provisions for management in the trust indentures issued from 1951 through 1974. There are $170,000,000 in bonds issued under the New Series.

4. Appellants insist "that elections be promptly held in order that new members of the Board may be Constitutionally selected or, in the alternative, order that Defendants * * * as members of the City Council of the City of San Antonio, fill the existing vacancy and appoint trustees to serve the remainder of the appointive members terms;"

5. The majority concurring opinion by Judge Wisdom in *Kohler v. Tugwell*, 292 F.Supp. 978, 985 (E.D.La.1968), aff'd 393 U.S. 531, 89 S.Ct. 879, 21 L.Ed.2d 755 (1969).

vacancies, exceeded the authority granted to the Council under the state statute. The problem presented by that contention is, of course, simply a matter of interpretation of state law, and does not present a federal question.

The judgment of the district court is AFFIRMED.[6]

---

6. One of the many allegations of the complaint is that the vacancy appointment procedure "is for the purpose and has the effect of continuing racial and ethnic discrimination * * * by the virtual exclusion of Mexican-Americans and the total exclusion of Blacks from the City Public Service Board of San Antonio." It was revealed during argument that there are now four (4) appointed members. Two are Mexican-Americans, one of whom is Chairman. One member is Black. One member is Anglo.