**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MINING ENERGY, INCORPORATED; OLD
REPUBLIC INSURANCE COMPANY,
                        *Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR; ANNA
RUTH POWERS, Widow of Woodrow
Wilson Powers,

                        *Respondents.*

No. 02-2259

On Petition for Review of an Order
of the Benefits Review Board.
(00-1134-BLA)

Argued: October 26, 2004

Decided: December 16, 2004

Before LUTTIG, KING, and DUNCAN, Circuit Judges.

---

Dismissed by published opinion. Judge King wrote the opinion, in
which Judge Luttig and Judge Duncan joined.

---

## COUNSEL

**ARGUED:** Mark Elliott Solomons, GREENBERG TRAURIG,
L.L.P., Washington, D.C., for Petitioners. Gary K. Stearman, Office

of the Solicitor, Black Lung Division, UNITED STATES DEPART-
MENT OF LABOR, Washington, D.C., for Respondents. **ON
BRIEF:** Laura Metcoff Klaus, GREENBERG TRAURIG, L.L.P.,
Washington, D.C., for Petitioners. Howard M. Radzely, Acting Solic-
itor of Labor, Allen H. Feldman, Associate Solicitor for Special
Appellate and Supreme Court Litigation, Nathaniel I. Spiller, Deputy
Associate Solicitor, UNITED STATES DEPARTMENT OF LABOR,
Washington, D.C., for Respondent Director.

---

**OPINION**

KING, Circuit Judge:

Mining Energy, Inc., and its insurer, Old Republic Insurance Com-
pany, (collectively "Mining Energy"), petition this Court for review
of the May 2002 decision of the Benefits Review Board of the
Department of Labor (the "Board"), which granted Mining Energy's
motion for reconsideration but denied its request for relief. *See Pow-
ers v. Mining Energy, et al.*, No. 00-1134 BLA (BRB May 30, 2002).
As explained below, the petition for review was not filed in a timely
manner and must be dismissed for lack of jurisdiction.

I.

This dispute has a long and contentious history. It began in 1988,
when an administrative law judge ("ALJ") first awarded black lung
benefits to Woodrow Powers, a retired twenty-eight-year veteran of
the coal mines of southwestern Virginia. Mining Energy, his former
employer, appealed the ALJ's decision to the Board, which, on Janu-
ary 28, 1991, upheld the award of benefits.

Beginning in October 1991, Mining Energy declined to pay certain
of Powers's medical bills, contending that his ailments were caused
by cigarette smoking rather than by pneumoconiosis resulting from
his coal mine employment. On April 30, 1994, before the medical
bills dispute with Mining Energy could be resolved, Mr. Powers died.
His widow, Ruth Ann Powers, filed a separate claim for survivor's
benefits on May 17, 1994.

The ALJ thereafter conducted a joint hearing on Mr. Powers's claim for medical benefits and on Mrs. Powers's claim for survivor's benefits. In a ruling of May 21, 1997, the ALJ denied both claims on the basis that Mr. Powers's illness and death were not due to coal miner's pneumoconiosis. On April 15, 1999, the Board vacated the ALJ's decision. It remanded both claims to the ALJ with directions that he consider the prohibition on relitigation of entitlement to medical benefits explained in *Doris Coal Co. v. Director, OWCP*, 938 F.2d 492, 496-97 (4th Cir. 1991), and that he also consider the potential collateral estoppel effect on Mrs. Powers's survivor claim of the ALJ's earlier finding of pneumoconiosis.

Mining Energy moved for reconsideration of the Board's remand decision, but the Board, in a ruling of November 30, 1999, adhered to its decision of April 15, 1999. On remand, an ALJ, on July 31, 2000, awarded benefits to the Powers on both claims. The Board affirmed those awards on September 28, 2001, and Mining Energy again moved for reconsideration. On May 30, 2002, the Board granted the motion for reconsideration, and denied Mining Energy's request for relief (the "May 30 Ruling").

On October 28, 2002, 151 days after the May 30 Ruling, Mining Energy filed its petition for review in this Court, seeking our review of that ruling. Because the applicable statute, 33 U.S.C. § 921(c), mandates that a petition for review be filed within sixty days of issuance of a decision by the Board, Mining Energy wrote to the Court, on October 24, 2002, explaining that it had no knowledge of the May 30 Ruling until September 23, 2002, when it received notification from the Department of Labor ("DOL") regarding payment of benefits. Mining Energy contends (and the Director agrees) that on May 30, 2002, Mining Energy was erroneously served with an opinion in an unrelated case, rather than with the May 30 Ruling.

The Director initially moved in this Court to dismiss Mining Energy's petition for review for lack of jurisdiction, asserting that the petition was not filed within sixty days of issuance of the Board's decision, as required by § 921(c). Mining Energy opposed the motion to dismiss, contending that its petition for review was filed in a timely manner, within sixty days of September 23, 2002, the date on which Mining Energy received *actual* notice of the May 30 Ruling. Upon

receiving evidence that Mining Energy was indeed served with an unrelated Board decision, the Director, by letter dated October 22, 2004 (received and filed by our Clerk on October 26, 2004) withdrew his motion to dismiss. At the oral argument conducted on October 26, 2004, the Director confirmed the withdrawal of his motion.

II.

The appellate process at issue in this case was established by Congress in the Longshore and Harbor Workers' Compensation Act ("LHWCA"), codified at 33 U.S.C. §§ 901-950. The Secretary of Labor administers the Act, which includes section 921(c) of Title 33. That section provides that:

> Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, *by filing in such court within sixty days following the issuance of such Board order* a written petition praying that the order be modified or set aside.

33 U.S.C. § 921(c) (emphasis added). As we held in *Butcher v. Big Mountain Coal, Inc.*, 802 F.2d 1506, 1507-08 (4th Cir. 1986), the sixty-day filing period established by Congress in § 921(c) is jurisdictional. Several other circuits have agreed with our view. *See Stevedoring Servs. of Am. v. Dir., OWCP*, 29 F.3d 513, 516 (9th Cir. 1994); *Brown v. Dir., OWCP*, 864 F.2d 120, 122 (11th Cir. 1989); *Bolling v. Dir., OWCP*, 823 F.2d 165, 166 (6th Cir. 1987); *Dawe v. Old Ben Coal Co.*, 754 F.2d 225, 227 (7th Cir. 1985); *Clay v. Dir., OWCP*, 748 F.2d 501, 502 (8th Cir. 1984); *Pittston Stevedoring Corp. v. Dellaventura*, 544 F.2d 35, 43-44 (2d Cir. 1976), *aff'd on other ground sub nom. Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249 (1977).

In this proceeding, Mining Energy maintains that a Board decision has not been "issued," within the meaning of § 921(c), until and unless it has been both filed with the Board *and* properly served on the parties via certified mail, or until the party has received actual notice. The Director initially moved to dismiss the petition, maintaining that the certificate of service was legally sufficient and that "no-

where in the statute or regulation is actual notice required." Respondent's letter of 10/18/04, at 1. However, in his subsequent submission to the court, and at oral argument, the Director joined Mining Energy in urging that, "where the Board did not send the decision to the parties . . . it has not 'issued' the decision as that term has been interpreted in the regulation" and, in such an event, "the statutory time period does not begin to run until the petitioner receives actual notice of the decision." Respondent's letter of 10/22/04, at 2. The Director thus now contends that "issuance," pursuant to § 921(c), requires filing *and* looking behind a certificate of service to confirm that the decision was actually mailed.[1]

For support of this proposition, both parties point principally to two DOL regulations, 20 C.F.R. §§ 802.403 and 802.410. The first of the these regulations, § 802.403, is entitled "Issuance of decisions; service," and it outlines the procedures that the Board is to follow in rendering a decision. In its subsection (b), § 802.403 directs:

> The original of the decision shall be filed with the Clerk of the Board. A copy of the Board's decision shall be sent by certified mail or otherwise presented to all parties to the appeal and the Director. The record on appeal, together with a transcript of any oral proceedings, any briefs or other papers filed with the Board, and a copy of the decision shall be returned to the appropriate deputy commissioner for filing.

---

[1]At oral argument, the Director suggested that his "interpretation" should be entitled to "*Skidmore*" deference. *See U.S. Dep't of Labor v. North Carolina Growers Ass'n*, 377 F.3d 345, 353-54 (4th Cir. 2004) (deferring to the agency's interpretation "only to the extent that the interpretation has the power to persuade," citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). It is unclear whether the Director meant this statement to refer to his interpretation of the regulation or the regulation's interpretation of the statute. In any event, the Director's interpretation of the regulation is entitled to "considerably less deference" because he has taken essentially two contradictory positions. *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 446 n. 30 (1987) (quoting *Watt v. Alaska*, 451 U.S. 259, 273 (1981)). Further, because his most recent interpretation is "plainly erroneous" and "inconsistent with the regulation," it is not controlling. *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

The second regulation, § 802.410, is entitled "Judicial review of Board decisions." It provides in § 802.410(a) that:

> [w]ithin 60 days after a decision by the Board has been filed pursuant to § 802.403(b), any party adversely affected or aggrieved by such decision may file a petition for review with the appropriate U.S. Court of Appeals pursuant to section 21(c) of the LHWCA.

Both of these regulations were adopted by the DOL without conducting the notice-and-comment procedure contemplated by the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* (2000), in certain circumstances.[2] *See* 52 Fed. Reg. 27288, 27290 (July 20, 1987).

Here, the parties maintain that §§ 802.403 and 802.410 clarify what they contend is the statute's ambiguous use of the term "issuance," and that these regulations support their position that the May 30 Ruling was not "issued" on May 30 because it was not properly served.[3] Despite what Mining Energy and the Director contend, however, neither § 802.403 nor § 802.410 defines the "issuance" of a Board decision as being when the decision has been both filed with the Clerk of the Board *and* served on the parties. Section 802.403(b) does oblige

---

[2]Section 553(b)(A) of Title 5, United States Code, exempts from the APA's notice-and-comment requirements, *inter alia*, agency "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." The DOL relied on this exception in the preamble to the regulations. *See* 52 Fed. Reg. at 27290.

[3]We have recently explained that a regulation that clarifies a statute's ambiguous use of a term, or explains how a provision operates, should be characterized as "interpretive." *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 452 (4th Cir. 2004) (discussing difference between deference due to legislative regulation and that due to interpretive regulation). While interpretive regulations are not entitled to the full "arbitrary and capricious" review set forth in *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984), the courts (if Congress has not spoken on the precise question at issue) are to accord them "considerable weight" and uphold them if they implement the congressional mandate in "a reasonable manner." *Walton*, 370 F.3d at 454 (internal citations omitted).

the Clerk of the Board to serve Board decisions by certified mail. However, the mere fact that the DOL directs the Board's Clerk to serve Board decisions does not mean that the DOL has interpreted the term "issuance" in § 921(c) to mean that an opinion has not been issued until it has been both filed *and* served.

To the contrary, § 802.410(a) provides otherwise: it specifies that an aggrieved party may file a petition for review with the court of appeals within "60 days after" the decision by the Board has been "*filed* pursuant to 20 C.F.R. § 802.403(b)." § 802.410(a) (emphasis added). Because § 802.403(b) addresses how the Clerk of the Board is to handle both "filing" and "service," § 802.410(a)'s selection of one of those terms (filing), and not the other (service), makes it plain that the sixty-day filing period begins to run with the *filing* of a Board opinion with the Clerk of the Board.

In any event, this result is the commonsense and plain interpretation of the term "issuance," as it is used in § 921(c). Black's Law Dictionary defines "issue" as "to put forth officially," or "to send out or distribute officially." Black's Law Dictionary 850 (8th ed. 2004). Similarly, Webster's Third New International Dictionary defines "issuance" as the noun form of "issue" which, in the context of a written order, means "the act of . . . proclaiming or promulgating." Webster's Third New Int'l Dictionary 1201 (1976). As with decisions issued by other administrative and judicial bodies, the May 30 Ruling was "authoritative" and "promulgated" upon its filing, not upon Mining Energy's receipt. Further, it is significant that jurisdictional time limitations have traditionally been construed by the courts to commence to run at the entry of judgment. *See* Fed. R. App. P. 4(a)(1)(making entry of judgment date from which appeal period runs). Finally, the fact that Congress inserted a service requirement into nearby § 919(e), which governs the procedure for adjudicating initial claims in front of the deputy commissioner, *see Dominion Coal Corp. v. Honaker*, 33 F.3d 401, 404-05 (4th Cir. 1994), but did not insert any such requirement into § 921(c), governing petitions for review by the courts of appeals, is also persuasive.

Significantly, we have previously interpreted the "issuance" of a decision by the Board not to include a service requirement. In our *Butcher* decision, Judge Widener rejected the petitioner's contention

that, because there was no evidence that the Board's decision had been properly served as required by § 802.403(b), an otherwise untimely petition was rendered timely. 802 F.2d at 1507-08. And nearly every court of appeals to have faced the question of when a Board opinion should be deemed as having been "issued" has agreed with *Butcher* and with the conclusion we reach today. *See Stevedoring Servs. of Am.*, 29 F.3d at 516 (holding that issuance under § 921(c) means filing with Clerk of Board); *Clay*, 748 F.2d at 502-03 (rejecting petitioner's contention that Board's decision was never "issued" within meaning of § 921(c) because Board did not serve decision on "all parties" as required by 403(b)); *Pittson Stevedoring*, 544 F.2d at 43-44 (interpreting § 921(c) to make "the time for seeking review start to run with the entry of the agency's order, even though the agency is under a duty to give notice"). *But see Peabody Coal Co. v. Vigna*, 22 F.3d 1388, 1392 n.10 (7th Cir. 1994) (finding petition for review timely when received by court within sixty days of actual notice).

In this proceeding, Mining Energy urges us to carve out an exception to our decision in *Butcher*, and to the consistent rulings of our sister circuits, by maintaining that, unlike the parties in those proceedings, it did not receive actual notice of the Board's decision. In the context of the statute and regulations at issue here, however, this effort is unavailing. The DOL, in § 802.410(a), has properly contrued § 921(c)'s sixty-day filing period as commencing to run when a Board decision is *filed* with the Clerk of the Board.[4] And, "there is no reason not to read 33 U.S.C. § 921(c) as meaning what it says." *Butcher*, 802 F.2d at 1508 (quoting *Pittston Stevedoring*, 544 F.2d at 44).

Nor is there any constitutional reason why § 921(c), and 20 C.F.R. § 802.410(a), cannot be enforced as they are written. While Mining Energy contends that permitting the sixty-day window for judicial review to expire when there has been a lack of actual notice of the Board's decision contravenes constitutional due process requirements, that contention is without merit and must be rejected. It is well-

---

[4]Because Mining Energy has disclaimed any contention of equitable tolling due to good cause or excusable neglect, we need not reach or address any such issue.

established that the due process clause, alone, guarantees no right to appellate review. *See, e.g.*, *M.L.B. v. S.L.J.*, 519 U.S. 102, 110 (1996) (concluding that due process clause alone did not require Mississippi to provide indigent mother appellate review from termination of parental rights); *Ohio ex rel. Bryant v. Akron Metro. Park Dist.*, 281 U.S. 74, 80 (1930) (holding that "the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance"). Nor is "actual notice" ever the controlling standard in such disputes, even in the context of service of process.[5] *See Mullane v. Cent. Hanover Trust Co.*, 339 U.S. 306, 318 (1950) (evaluating whether notice was "reasonably calculated to reach the interested parties").

### III.

Pursuant to the foregoing, we lack jurisdiction in this proceeding and the petition for review must be dismissed.

*PETITION FOR REVIEW DISMISSED*

---

[5]Our conclusion on this point does not negate the seriousness of the Board's failure to properly conduct its affairs, nor our disapproval of it. In any event, however, counsel for Mining Energy appears to have received timely inquiry notice of the May 30 Ruling. Mining Energy acknowledges that its counsel was served with a copy of a Board decision, also dated May 30, 2002, though it contends, and the Director admits, that the opinion mailed to Mining Energy was for an unrelated Board proceeding in which neither Mining Energy nor its counsel were involved. This apparent error placed Mining Energy on notice that a decision in one of its cases had likely been rendered by the Board, and Mining Energy should have conducted an appropriate follow-up inquiry.